AF Approval *TCK for JAM*　　　　　　　Chief Approval __DJM__

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.　　　　　　　　　　CASE NO. 8:23-cr-361-WFJ-CPT

STEPHEN JAY THORN

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, Stephen Jay Thorn, and the attorney for the defendant, Jason Mayberry, mutually agree as follows:

### A.　Particularized Terms

1.　Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Indictment. Count one charges the defendant with Interstate Threat to Injure, in violation of 18 U.S.C. § 875(c).

2.　Maximum Penalties

Count One carries a maximum sentence of five years imprisonment, a fine of $250,000.00, a term of supervised release of not more than three years, and a special assessment of $100 per felony count for individuals. With respect to certain offenses, the Court shall order the

Defendant's Initials SJT

defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3. Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count one are:

First: The Defendant knowingly sent a message in interstate commerce containing a true threat to injure the person of another; and

Second: the Defendant sent the message with the intent to communicate a true threat or with recklessness as to whether it would be viewed as a true threat.

4. Counts Dismissed

At the time of sentencing, the remaining count against the defendant, Count Two, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the

Defendant's Initials SGT

2

United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6. Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials SQT      3

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative

Defendant's Initials SQT            4

forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by

Defendant's Initials SJT         5

the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for

Defendant's Initials SQT           6

acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

## B. Standard Terms and Conditions

### 1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are

Defendant's Initials SQT          7

dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

Defendant's Initials SJT          8

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete,

Defendant's Initials SQT          9

accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement or defer a decision until it has had an opportunity to consider the presentence

Defendant's Initials SBT          10

report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as

Defendant's Initials SQT            11

determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon

Defendant's Initials SQT        12

any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The

Defendant's Initials SGT          13

defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

## FACTS

On October 24, 2022, THORN read an article from an online news website about a judicial opinion. THORN was unhappy with the opinion and made five calls from his phone number, (904) 673-9526, to the Chambers of a United States District Judge in Orlando, Florida and left five voicemail recordings at approximately 12:53 p.m., 12:57 p.m., 1:04 p.m., 3:47 p.m. and 3:51 p.m. that, taken in their entirety, constitute a true threat to injure the person of another. When dialing each of the calls, THORN dialed *67 in order to mask his identity. The five voicemail recordings are transcribed here:

a. "Listen, you redneck cunt bitch, you're just showing your true colors, playing to Trump who appointed you and to DeSantis.

Defendant's Initials SJT    14

You have no fucking idea what LGBTQ kids go through. I'm a retired teacher. I've taught in Florida. I've taught in California. I have seen the sheer hell those kids are put through and you have the gall to say that that's part of middle school or high school is to be picked on. You should not be a judge. You're a heartless rotten piece of shit and you're showing your true colors you're playing to Trump's base and to DeSantis. You are fucking embarrassment to the judicial system. You need to resign you fucking skag."

b. "You rotten piece of shit, crooked piece of shit. Let's see how you would like it if somebody endangered your children in school or your grandchildren in school. You are an embarrassment to the judicial system. Again, maybe that's not a bad idea, Tit for tat. Those poor kids suffer so much, the LGBTQ kids. You have no concept of reality, maybe we need to make sure your children or grandchildren have to face the same flight. You rotten piece of shit. It's so obvious you're playing to Trump's base because Trump appointed you. Political payback, huh? You crooked bitch."

c. "Listen, you cunt. It's so easy to find personal information now. I see that you and your husband [VICTIM 2] live in [redacted city name] with your two children. You want to make LGBTQ kids suffer, because you're a fucking patsy for Trump and DeSantis? Maybe the same needs to happen to your kids. I'm not saying it will be me, although I am familiar with [redacted city name] and [redacted city name], but I would say you need to be very careful. When you hurt other children like that, innocent children, just because of your fucking allegiance to Trump and DeSantis. Tit for tat, just remember that— an eye for an eye— you stupid bitch."

d. Listen, cunt, again, I'm not vicious or mean, I'm not vicious like you, hurting the whole community of thousands of LGBTQ kids who are already vulnerable and then they're now being even more vulnerable. You're basically giving a green light for them to be thought of as second-class citizens and bullied. And your stupid comments that middle school kids get bullied everywhere - Let's see if that happens with [VICTIM 3] and [VICTIM 4], you

Defendant's Initials SQT      15

fucking dumbass. [redacted partial address], very easy to track you down. Now, I'm not threatening you because I'm not like that, but putting your number, your name, your address, your kids' names, your husband's name – that's public knowledge, bitch. You're paid by us, U.S. taxpayers, the Florida taxpayers, for that matter. So, what goes around, comes around. You're a heartless, cold-hearted cunt and you're just Trump's pawn and you're playing in to what DeSantis wants. You don't think that people see you for what you are. Fucking sellout, hurting all those kids. Just remember what goes around comes around. Again, I'm not threatening you, but I do know many people that aren't very happy with what you did."

e. "This is for that stupid redneck, cunt, judge, [VICTIM 1]. You are a cruel person. You think that its okay for LGBTQ kids to be bullied, which is what that law is allowing, that's what it's saying that they're second-class citizens. Listen dumbass, you're easy to track you down. You have 2 kids, [VICTIM 3] and [VICTIM 4], and you're married to a man named [VICTIM 2], and your address is [redacted address] in [redacted city name]. I'm not a vindictive person and I wouldn't hurt anyone just like you've hurt a whole community, thousands of LGBTQ kids in the state of Florida, a state of 22 million people, you fucking vicious cunt."

At the time that he left these voicemails, THORN had the intent to communicate a true threat and knew that the voicemails would be viewed as a true threat.

The judge's career law clerk listened to the voicemails, notified the judge and contacted the United States Marshals Service to report the threat. The law clerk feared not only for the safety of the family of the District Court Judge, but also her own family and the family that was then living at the address that THORN had referenced in the voicemails.

Defendant's Initials SQT       16

Phone records revealed that THORN's cellphone number was the phone number that initiated all five calls, and further that the caller had used *67 in an attempt to mask his identity. The records also revealed that THORN's address in Pensacola, Florida, was the address associated with the phone number used to make the calls. Phone records revealed that each of the voicemails were routed through either California or Virginia enroute to the U.S. District Court Judge's Chambers in Orlando, Florida.

On October 31, 2022, at approximately 2:05 p.m., Deputy United States Marshals, working with local law enforcement, conducted an interview of THORN at his residence. After initially denying his involvement, THORN later admitted that he had made the threatening calls and explained that he was angry about an opinion that the judge had authored.

The above is merely a summary of some of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all the events, persons involved, or other information relating to this case.

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea

Defendant's Initials SQT          17

and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 4th day of April 2024.

ROGER B. HANDBERG
United States Attorney

Stephen Jay Thorn
Defendant

Jason Mayberry
Attorney for Defendant

Joseph H. Wheeler
Assistant United States Attorney

Daniel J. Marcet
Assistant United States Attorney
Chief, National Security Section

18